T.C. Memo. 1998-105


UNITED STATES TAX COURT


VALERIE JEAN GENCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22967-96.                    Filed March 16, 1998.


Valerie Jean Genck, pro se.

<u>Reginald R. Corlew</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for 1992 in the amount of $5,127, an addition to tax pursuant to section 6651(a)(1) in the amount of $1,313, and an accuracy-related penalty pursuant to section 6662(a) in the amount of $1,025.

The issues for decision are: (1) Whether petitioner is entitled to Schedule C business expense deductions; (2) whether petitioner is liable for the section 6651(a)(1) addition to tax; and (3) whether petitioner is liable for the section 6662(a) accuracy-related penalty.[2]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Hollywood, Florida, on the date the petition was filed in this case.

Petitioner works as a self-employed musician and band manager. She and her husband, Matthew Genck, are members and managers of a jazz band named "Paris" (the band). Petitioner spends an average of 12 hours per week performing as the band's lead singer. Matthew plays the bass guitar. Although petitioner and Matthew are primarily responsible for managing the band, they generally split the band's profits and expenses three ways with

---

[2] Respondent's adjustments to petitioner's liability for self-employment taxes and deduction for one-half of such liability are computational and will be resolved by the Court's holdings on the issues in this case.

petitioner's brother-in-law, John Genck, who is the band's drummer, composer, and technical expert. The band also has a full-time keyboard player, Jim Gazier, and various part-time accompanying musicians who do not share in the band's profits. The band performs at weddings and nightclubs at various locations in the tricounty area of Dade County, Broward County, and Palm Beach County, Florida.

Petitioner and Matthew reside in an apartment located above a marketplace at 2424 Hollywood Boulevard in Hollywood, Florida. The apartment is divided, in roughly equal areas, into living quarters and an office. The two areas are connected by a single door. The living quarters consist of two bedrooms, a living room, a kitchen, and a bathroom. The office consists of a large studio and a smaller room located adjacent thereto. The studio contains recording equipment and computers. It also contains filing cabinets in which the band's contracts, sheet music, and supplies are stored. The smaller room contains a desk, a telephone, a couch, and a kitchenette. Unlike the band's other expenses, since the office is part of petitioner and Matthew's apartment, they each paid and claimed deductions for 50 percent of the band's office-related expenses for 1992.

Petitioner spends an average of 30 hours per week managing the band out of the office. She promotes the band through the distribution of advertising flyers which are designed on the office computers. She books the band's performances and

negotiates contracts with its clients. She maintains files of the band's lyrics, music books, and audio and video demos. She is responsible for hiring accompanying musicians, coordinating their stage apparel, and issuing their paychecks. All of the above-mentioned management activities are conducted in the office.

The first issue for decision is whether petitioner is entitled to Schedule C business expense deductions. Petitioner filed her 1992 return under married filing separately filing status. On a Schedule C attached to her return, petitioner reported gross receipts in the amount of $21,542.50 and claimed the following deductions:

| | |
|---|---:|
| Bad debt | $183.33 |
| Car and truck expenses | 3,627.20 |
| Depletion | 2,100.00 |
| Insurance | 210.00 |
| Interest | 1,880.00 |
| Professional services | 645.00 |
| Office expenses | 629.00 |
| Rental of business property | 2,169.33 |
| Supplies | 1,143.00 |
| Travel | 33.33 |
| Meals and entertainment | 1,050.40 |
| Utilities | 1,289.00 |
| Stage clothes | 2,777.00 |
| Stage makeup | 930.00 |
| Miscellaneous | 890.00 |
| Dry cleaning | 106.00 |
| Donations | 940.00 |

In the statutory notice of deficiency, respondent disallowed all of the claimed deductions.

Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and petitioner bears the

burden of proving otherwise.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Moreover, deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving her entitlement to any deductions claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

Section 162(a) allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Although we will address each of petitioner's claimed business expense deductions separately, <u>infra</u>, we generally find that petitioner's testimony was entirely credible and do not hesitate to rely on it.  Petitioner appeared at trial in possession of well-organized written documentation of all of the claimed expenses.  In our view, respondent's counsel accepted her testimony as adequate substantiation in light of his repeated failure to ask her to corroborate her testimony with documentary evidence.  Moreover, the statutory notice of deficiency does not reveal respondent's basis for the blanket disallowance of the claimed deductions.  Significantly, respondent's counsel was unable to state, at trial, whether or not substantiation of the amounts claimed was an issue in the case.  We, therefore, only address the question of whether she is entitled to deductions for the amounts paid.

## Home Office Expenses - Rent and Utilities

Petitioner claimed deductions for rent and utilities paid with respect to her home office in the amounts of $1,200 and $1,289, respectively.

Section 280A(a) provides that in the case of a taxpayer who is an individual, no deduction otherwise allowable under chapter 1 of the Code (relating to normal taxes and surtaxes) shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

The term "dwelling unit" includes a house, apartment, condominium, or similar property, and all structures or other property appurtenant to such dwelling unit.  Sec. 280A(f)(1)(A).

Section 280A(c) provides for exceptions to section 280A(a). In pertinent part, section 280A(c)(1)(A) states that section 280A(a) shall not apply to any item to the extent that such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer.  We are convinced from the record that 50 percent of petitioner's apartment was exclusively used on a regular business for her band management activities.  We must also, however, address the question of whether the home office constitutes her principal place of business.

The Supreme Court in Commissioner v. Soliman, 506 U.S. 168 (1993), postulated two primary considerations to decide whether

an office located within a taxpayer's dwelling unit is a taxpayer's principal place of business: (1) The relative importance of the activities performed at each business location, and (2) the time spent at each place. Id. at 175.

We find that the importance of, and the time spent on, the activities performed at the office are sufficient to support its treatment as petitioner's principal place of business as manager of the band. In addition to the various managerial and administrative activities conducted at the office, the band recorded and edited its promotional video and audio tapes in the studio. The office computers and other equipment were also used to both create and mix portions of the band's songs. We are further persuaded by the fact that petitioner spent an average of 30 hours per week working in the home office.

Petitioner's role as the band's manager and the importance and extent of her time spent on activities performed in the office convinces us that her home office constitutes her primary place of business as the band manager. Accordingly, we hold that petitioner is entitled to the deductions claimed by her as her share of the rent and utilities attributable to her home office.

Car and Truck Expenses

Petitioner claimed a deduction in the amount of $3,627.20 for expenses paid for transporting the band's equipment and members from the home office to their various performance locations. Since we have found, supra, that petitioner's home

office is properly treated as her primary place of business as the band manager, it follows that the claimed transportation expenses are not commuting expenses and may therefore be deductible under section 162(a) as travel expenses between places of business. Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980); Kahaku v. Commissioner, T.C. Memo. 1990-34.

## Insurance

Petitioner claimed a deduction for insurance paid in the amount of $210. She testified that the claimed expense represents the amount paid by her for car insurance. However, petitioner failed to address whether such amount was allocated according to her business and personal use of the car. We therefore hold that petitioner is not entitled to the claimed insurance deduction of $210.

## Meals and Entertainment

Petitioner claimed a deduction for meals and entertainment in the amount of $1,050.40 after accounting for certain limitations. The amount claimed consists of the per diem allowance for meals paid for by petitioner while she was performing at various locations. Based upon our review of the record, we hold that such meal expenses are not deductible because the amount claimed was for personal living expenses. Sec. 262.

Bad Debt

Petitioner claimed a deduction for a bad debt in the amount of $183.33 on her return as her share of an uncollected fee for one of the band's performances. In August of 1992, the band entered into a contract with the Spectrum Club to perform two nights for $1,100. The band contracted with side men (independent musicians) to perform with the group and guaranteed the side men's wages. Spectrum paid the band for one night's performance; it did not pay the band for the second night. The band, however, paid the side men their wages for the second night's performance. Based upon the facts presented, we find that petitioner may not deduct the $183.33 claimed as a bad debt. We do, however, hold that she is entitled to claim the $183.33 as an ordinary and necessary business expense. Sec. 162(a).

Depreciation

Petitioner claimed a deduction in the amount of $2,100 as depletion. At trial, the parties agreed that the claimed deduction was intended to be for depreciation of equipment purchased during 1992. Petitioner submitted a number of checks in support of the claimed deduction. She contends that she properly deducted the entire cost of the equipment pursuant to section 179.

Section 179 allows a taxpayer to elect to treat the cost of section 179 property as a current expense in the year such property is placed in service within certain dollar limitations.

Sec. 179(a).  An election under section 179 must be made on the taxpayer's original return for the taxable year or a timely filed amended return.  Sec. 179(c)(1)(B); sec. 1.179-4(a), Income Tax Regs.  The election must specify the items of section 179 property to which the election applies and the cost of each of the items.  Sec. 179(c)(1)(A); sec. 1.179-4(a)(1) and (2), Income Tax Regs.  Petitioner did not make the requisite election on her 1992 return because she failed to specify the items for which the section 179 deduction was claimed.[3]  Therefore, we hold that she is not entitled to a section 179 deduction for 1992.

After reviewing the checks submitted by petitioner, we are satisfied that the amounts were paid for musical equipment, consisting of covers and cases, that may be depreciated.  However, petitioner failed to provide an explanation for the difference between the amount listed on her return ($2,100) and the amount substantiated by the checks ($1,275).

We hold that petitioner is entitled to depreciate musical equipment placed into service in 1992 in the total amount of $425, which represents her one-third share of the total amount shown on the checks.  We instruct the parties to determine the proper amount of petitioner's 1992 depreciation deduction in the

---

[3]  Petitioner failed to attach to her return a Form 4562 on which the specific items to be deducted under sec. 179 must be listed.

Rule 155 computation in accordance with the appropriate section 168(e) classification.

## Interest

Petitioner claimed a deduction for interest paid in the amount of $1,880. The interest claimed consists of: (1) One-half of the interest paid during 1992 on petitioner's credit card debt, and (2) interest paid during 1992 on a loan obtained by petitioner to pay for studio recording time.

Section 163(a) provides that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. However, section 163(h)(1) generally disallows any deduction for personal interest paid or accrued during the taxable year. Although petitioner testified that she used her credit cards for both business and personal expenses, we accept her estimate that 50 percent of her credit card interest was paid on debt incurred for business purposes, based upon her credible testimony. Since the interest paid on the debt incurred to pay for studio recording time is directly related to petitioner's business, we hold that she is entitled to her claimed deduction for interest expense.

## Rental of Recording Studio

Petitioner claimed a deduction for rental of business property in the amount of $2,169.33. The amount claimed includes $1,200 paid as rent for the home office, discussed supra, and

$878 paid as rent for studio recording time. Petitioner did not explain what the remaining amount of $91.33 was claimed for. Therefore, we hold that petitioner, in addition to the $1,200 of rent for the home office, is only entitled to a deduction in the amount of $878 for studio recording time as an ordinary and necessary business expense. Sec. 162(a).

Professional Services

Petitioner claimed a deduction for professional services in the amount of $645. The amount claimed represents payments to an engineer for mastering the final tracks of the band's audio and video tapes. We hold that this expense is deductible as an ordinary and necessary business expense. Sec. 162(a).

Office Expenses

Petitioner claimed a deduction for office expenses in the amount of $629. The amount claimed consists of payments for stamps, paper goods, typewriter ribbons, and computer disks. We hold that these expenses are deductible as ordinary and necessary business expenses. Sec. 162(a).

Supplies

Petitioner claimed a deduction for supplies in the amount of $1,143. The amount claimed consists of payments for promotional glossy photographs, and cassettes and compact disks containing songs requested by customers but not previously included in the band's repertoire. We hold that these expenses are deductible as ordinary and necessary business expenses. Sec. 162(a).

Travel

Petitioner conceded at trial that she could not explain the claimed deduction for travel in the amount of $33.33. Accordingly, we hold that she is not entitled to a deduction for that amount.

Stage Clothes

Petitioner claimed a deduction for stage clothes in the amount of $2,777. The amount claimed consists of clothes purchased by petitioner and worn during her performances. We had the opportunity at trial to view examples of the type of clothing worn by petitioner in her performances and agree with her that such clothes are not suitable for ordinary use. We hold that the amount she paid for stage clothes is deductible as an ordinary and necessary business expense. Sec. 162(a); Teschner v. Commissioner, T.C. Memo. 1997-498.

Stage Makeup

Petitioner claimed a deduction for stage makeup in the amount of $930. We hold that the amount claimed is deductible as an ordinary and necessary business expense. Sec. 162(a).

Dry Cleaning, Donations, and Miscellaneous Expenses

Petitioner claimed deductions for dry cleaning, donations, and miscellaneous expenses in the amounts of $106, $940, and $890, respectively. Petitioner failed to explain the nature of these expenses or how they specifically relate to her music

business.  We hold that the amounts claimed are not deductible as ordinary and necessary business expenses.

The second issue for decision is whether petitioner is liable for the section 6651(a)(1) addition to tax for 1992.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes that such failure is due to reasonable cause and not due to willful neglect.  "Reasonable cause" requires the taxpayer to demonstrate that she exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time. United States v. Boyle, 469 U.S. 241, 245-246 (1985).  "Willful neglect" means a conscious, intentional failure or reckless indifference.  Id. at 246.  The addition to tax equals 5 percent of the tax required to be shown on the return if the failure to file is for not more than 1 month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. Sec. 6651(a)(1).

Petitioner's 1992 return was due on April 15, 1993.  Sec. 6072(a).  She applied for and received an automatic, 4-month extension of time to file, until August 16, 1993.[4]  Sec. 6081; sec. 1.6081-4, Income Tax Regs.  Petitioner's return was not received by respondent until November 9, 1994.

-------

[4]  Since Aug. 15, 1993, fell on a Sunday, petitioner was allowed an extra day to file the return.  Sec. 7503.

Petitioner did not dispute in her petition or address at trial respondent's determination that she is liable for the section 6651(a)(1) addition to tax. We therefore find that she has failed to prove that her failure to timely file her return was not due to willful neglect or that such failure was due to reasonable cause. Accordingly, we hold that petitioner is liable for the section 6651(a)(1) addition to tax for 1992.

The third issue for decision is whether petitioner is liable for the section 6662(a) accuracy-related penalty for 1992. Respondent's determination of negligence is presumed to be correct, and petitioner bears the burden of proving that the penalty does not apply. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115; <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, one of which is negligence or disregard of rules or regulations. Sec. 6662(b)(1). Respondent determined that petitioner is liable for the accuracy-related penalty imposed by section 6662(a) for her underpayment of tax in 1992, and that such underpayment was due to negligence or disregard of rules or regulations. "Negligence" includes a failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional

disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Section 6664(c)(1), however, provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment, if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess her proper tax liability for the year. Id.

After reviewing the record and considering our holdings on the claimed deductions, we find that petitioner has proved that she acted in good faith with respect to her underpayment of tax. The record shows that she made a reasonable effort to assess her proper tax liability. Accordingly, we hold that petitioner is not liable for the section 6662(a) accuracy-related penalty for 1992.

To reflect the foregoing,

Decision will be entered

under Rule 155.