T.C. Summary Opinion 2019-17

UNITED STATES TAX COURT

JUN WU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8009-16S.                         Filed July 25, 2019.

Jun Wu, pro se.

<u>Sandeep Singh</u>, for respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code (Code) in effect when

the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is

---

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated January 5, 2016 (notice), respondent determined deficiencies in, and penalties with respect to, petitioner's Federal income tax for 2013 and 2014.

After concessions, the issues for decision are whether petitioner: (1) was engaged in the trade or business of gambling in 2014; (2) had unreported gambling losses up to the amount of his gambling income for 2014; (3) is entitled to depreciation and section 179 deductions in excess of what respondent has already allowed for each year in issue; (4) is entitled to deductions claimed on Schedule A, Itemized Deductions, in excess of what respondent has already allowed for each year in issue; (5) is entitled to deduct a loan origination fee paid in connection with financing the purchase of a rental property in 2013; and (6) is liable for a section 6662(a) accuracy-related penalty for either year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in California.

---

[1](...continued)
Code of 1986, as amended, in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

At all times relevant petitioner lived in San Francisco, California. During each year in issue he was an employee of Savvis Communications Corp. (Savvis). Petitioner worked from home because Savvis did not provide him with an office.

On May 3, 2013, petitioner purchased a house in San Francisco that he held for rent and rented out during 2013 and 2014 (rental property), typically for periods of one to three days. He paid an origination fee in order to acquire the loan that he used to finance the purchase of the rental property. The rental property was furnished with various items purchased in both 2013 and 2014. At no time during either year in issue did petitioner use the rental property as a residence.

Petitioner began to gamble at various casinos in Las Vegas, Nevada, and various cities in California during 2014. Most of his gambling activities consisted of slot machine play, although he did play blackjack and baccarat from time to time as well. Petitioner intended to win when he gambled, and he developed his winning strategies by reading a book he could not remember the name of, talking to people and casino employees at the various casinos, taking a class that lasted "a couple hours", and "just by playing". According to petitioner, he paid or incurred substantial transportation, hotel, and other traveling expenses in order to pursue his gambling activity. Petitioner did not treat his gambling activity as a trade or

business or as an activity entered into for profit on his 2014 Federal income tax return (2014 return), and, other than his gambling losses, he did not claim any deductions relating to his gambling income on his 2014 return. Petitioner prepared his 2014 return and his 2013 Federal income tax return (2013 return) himself.

Forms W-2G, Certain Gambling Winnings, and other casino records show that petitioner gambled frequently in 2014; however, he did not otherwise keep a schedule of his casino visits. Nor did petitioner maintain any sort of business records with respect to his gambling activity. Despite his intention to win at gambling, like many other gamblers, casino statements show that petitioner's losses substantially exceeded his winnings during 2014.

Petitioner reported his wages from Savvis on his 2013 return; he did not claim a deduction for unreimbursed employee business expenses related to that employment on the Schedule A included with that return. Nothing on the 2013 return can be construed as an election under section 179 with respect to any of the furniture or other assets used in connection with the rental property.

The income reported on petitioner's 2014 return includes his wages from Savvis and gambling winnings reported on Forms W-2G. The Schedule A included with that return shows unreimbursed employee business expenses, but no

deduction is claimed for those expenses because they do not exceed 2% of the adjusted gross income reported on the return.  See sec. 67(a).  The Schedule A also shows a deduction for gambling losses in the same amount as the gambling income identified as "other" income on the 2014 return.

The 2014 return also includes:  (1) Schedule C, Profit or Loss From Business, and (2) Schedule E, Supplemental Income and Loss.  The Schedule C relates to petitioner's employment with Savvis.  No income is shown on the Schedule C; expenses totaling $39,501 are deducted, resulting in a net loss in the same amount.  The Schedule E included with petitioner's 2014 return shows that the rental income exceeded rental deductions, including depreciation, for that year.  Nothing on the 2014 return can be construed as a section 179 election with respect to furniture or other assets used in connection with the rental property.

Most of the adjustments made in the notice have been agreed on between the parties or conceded by one or the other of them; other adjustments are computational.  Those adjustments will not be discussed.  Instead we turn our attention to those items that must be considered in the resolution of the issues now before us regardless of whether the issue stems from an adjustment made in the notice or a claim petitioner made after the notice was issued.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[2]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business.  Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  It has long been recognized that a taxpayer's status as an employee may constitute a trade or business within the meaning of section 162.  On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

---

[2]Petitioner does not claim and the record does not demonstrate that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

With these fundamental principles of Federal income taxation in mind, we consider petitioner's claims to the various deductions in dispute for the years in issue.

## I. Gambling Activity

### A. Wagering Losses

Consistent with an adjustment in the notice, petitioner agrees that his winnings from gambling in 2014 exceeded the amount of the winnings shown as "other" income on his 2014 return. He now claims a deduction for losing wagers in an amount that equals his winnings and exceeds the deduction shown for gambling losses on the 2014 return. The casino records introduced into evidence support his claim that his gambling losses exceeded his winnings in 2014. Accordingly, petitioner is entitled to a section 165(d) deduction equal to the 2014 gambling winnings that respondent determined are includable in his 2014 income.[3]

### B. Gambling Activity as a Trade or Business

Petitioner did not treat his gambling activity as a trade or business on his 2014 return. He now claims that the activity constituted a trade or business and that he is entitled to section 162(a) deductions for traveling expenses he claims to

---

[3]The deduction is properly claimed as a miscellaneous itemized deduction not subject to reduction under sec. 67(a). See sec. 67(b)(3).

have paid or incurred in connection with the gambling activity. According to respondent, petitioner's gambling activity was not carried on with the requisite profit motive so as to constitute a trade or business within the meaning of section 162 or an activity conducted for profit within the meaning of section 212. Under the circumstances we expect that petitioner's position on the point has been prompted, at least in part, in attempt to reduce the 2014 deficiency determined in the notice. Whether it was or was not, for the following reasons we reject his claimed deductions in excess of gambling losses.

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In pertinent part section 183(b) allows those deductions that would have been allowable had the activity been engaged in for profit only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit). In this case, deductions allowable under section 165(d) in effect prevent any deductions under section 183(b).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are

allowable under section 162 or under section 212(1) or (2) if the taxpayer is engaged in the activity with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981). The profit standard applicable to section 212 is the same as that used in section 162. See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), aff'g 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979).

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record. Groetzinger v. Commissioner, 82 T.C. 793, 803 (1984), aff'd, 771 F.2d 269 (7th Cir. 1985), aff'd, 480 U.S. 23 (1987); sec. 1.183-2(b), Income Tax Regs. In resolving this factual question, greater weight is given to objective facts than to a taxpayer's statement of intent. Sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be weighed when considering whether a taxpayer is engaged in an activity for profit. The relevant factors are: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expended in carrying on the activity; (4) the

expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other activities for profit; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned from the activity; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved in the activity. Id. No one factor is determinative of whether an activity is engaged in for profit. Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), aff'g 78 T.C. 471 (1982); Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs. In this case, some of the factors do not apply or are neutral.

Forms W-2G and other casino records establish, as petitioner claims, that he gambled frequently during 2014 and further that his losses substantially exceeded his winnings. A review of the 2014 return makes it obvious that petitioner's gambling activity was not his "means of making a living". Commissioner v. Groetzinger, 480 U.S. at 32.

Furthermore, he did not conduct the gambling activity in a businesslike manner. Other than the win/loss statements provided by the casinos, petitioner did not maintain any records for the activity, and he did not develop or follow any form of business plan. See Carmody v. Commissioner, T.C. Memo. 2016-225,

at *20-*23 (holding that a taxpayer was not engaged in horse-racing activity for profit when he did not have a written business plan, did not use spreadsheets and invoices to minimize losses or generate profits, and did not engage in any meaningful financial management with respect to his horse-racing activity). Gambling is routinely thought of as a recreational activity, see sec. 1.183-2(b)(9), Income Tax Regs., and while we have noted that no one factor is determinative, the recreational aspect of the gambling activity coupled with his failure to treat the activity as a trade or business from its inception go a long way in undermining his claim that he conducted the activity as a trade or business.

On the basis of all the facts and circumstances, we find that petitioner is not entitled to the trade or business deductions he now claims for the travel expenses related to his gambling activity because he did not engage in that activity with the sufficient profit motive to allow for the activity to be considered a trade or business within the meaning of section 162.[4]

---

[4]Our finding on the point also precludes deductions for the expenses under sec. 212. See sec. 212(1); Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), aff'g 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979).

## II. Schedule C Depreciation

In the joint stipulation of settled issues respondent concedes that petitioner is entitled to the following Schedule C depreciation: furniture (7-year class) with a depreciable basis of $27,220, placed in service on July 1, 2013; computer (5-year class) with a depreciable basis of $5,767, placed in service on July 1, 2013; appliances (5-year class) with a depreciable basis of $1,930, placed in service on July 1, 2013; and building (27.5-year class) with a depreciable basis of $274,500, placed in service on July 1, 2013. Petitioner now contends that he is entitled to an additional depreciation deduction, as well as a section 179 deduction for furniture.

A reasonable depreciation deduction may be allowed for the "exhaustion, wear and tear" of property used in a trade or business. Secs. 161, 167(a)(1). To substantiate entitlement to a depreciation deduction, a taxpayer not only has to show that the property was used in a business but also must establish the property's depreciable basis by showing the cost of the property, its useful life or recovery period, and its previously allowable depreciation. See, e.g., Cluck v. Commissioner, 105 T.C. 324, 337 (1995).

Alternatively, a taxpayer may elect to treat the cost of certain property used in an active trade or business as a current expense in the year that property is placed in service. Sec. 179(a), (d). The election must be made on the taxpayer's

first income tax return (whether or not the return is timely) or on an amended return filed within the time prescribed by law (including extensions) for filing the original return for such year. Sec. 179(c)(1)(B); Genck v. Commissioner, T.C. Memo. 1998-105; sec 1.179-5(a), Income Tax Regs.

Petitioner's records do not establish that he purchased depreciable business property for which respondent has not already allowed a deduction for either year in issue. Moreover, petitioner did not elect to expense the cost of the furniture in the years the furniture was placed in service. That election had to be made on his 2013 or 2014 tax return or on an amended return filed within the time prescribed by law (including extensions) for filing the original return. Accordingly, we reject petitioner's claim to a depreciation expense deduction or a section 179 deduction in excess of what respondent has already allowed.

## III. Schedule A Itemized Deductions

For each year petitioner claims that he is entitled to Schedule A deductions in excess of the amounts respondent allowed in the notice, but he has failed to offer any evidence to substantiate the aforementioned items. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs. Accordingly, petitioner is not entitled to Schedule A deductions in excess of the amounts respondent has already allowed.

IV.  Loan Origination Fee

Petitioner claims that he is entitled to deduct a loan origination fee paid in 2013 in connection with the purchase of the rental property.  Petitioner has established that he paid the fee.  According to respondent, however, because the rental property was not petitioner's residence, the fee must be amortized and deducted over the life of the loan.  See sec. 461(g); Goodwin v. Commissioner, 75 T.C. 424, 440-441 (1980), aff'd without published opinion, 691 F.2d 490 (3d Cir. 1982); Enoch v. Commissioner, 57 T.C. 781, 794-795 (1972).  We agree with respondent.  Petitioner is not entitled to a current deduction for 2013 for the loan origination fee.

V.  Section 6662(a) Accuracy-Related Penalty

Lastly, we consider whether petitioner is liable for a section 6662(a) accuracy-related penalty for either year in issue.  That section imposes an accuracy-related penalty equal to 20% of the underpayment of tax that is attributable to negligence or other specified grounds.  See sec. 6662(b).  Negligence as used in section 6662(b)(1) is defined as any failure to make a reasonable attempt to comply with the Code and includes any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Respondent bears the burden of production

with respect to the imposition of a section 6662(a) accuracy-related penalty. See sec. 7491(c). In support of that burden, respondent points out that petitioner failed to maintain adequate substantiating records for many of the expenses underlying the deductions claimed on his 2013 and 2014 returns.

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Commissioner may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained no later than the date the notice of deficiency is issued or the date the Commissioner files an answer or amended answer asserting the penalty. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; see also Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Compliance with section 6751(b)(1) is part of the Commissioner's burden of production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Graev v. Commissioner, 149 T.C. at 493.

The section 6662(a) accuracy-related penalties determined in the notice were properly approved as required by section 6751(b)(1). The record includes a

Civil Penalty Approval Form, approving imposition of accuracy-related penalties against petitioner for 2013 and 2014 and executed by the Internal Revenue Service tax examiner's immediate supervisor before the date the notice was issued; and nothing in the record suggests that petitioner was formally notified of the imposition of the penalties before the requisite supervisory approval was obtained. See Clay v. Commissioner, 152 T.C. __ (Apr. 24, 2019). As a result, we find that respondent met his burden of production with respect to the negligence penalties.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner bears the burden of proving that he had reasonable cause and acted in good faith with respect to the underpayments. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Petitioner has not shown reasonable cause for his failure to maintain adequate substantiating records for the disallowed Schedule A deductions. Furthermore, petitioner has not provided any explanation for the portions of the underpayments of tax attributable to items he conceded. Accordingly, he is liable

for section 6662(a) accuracy-related penalties on the portions of the underpayments of tax attributable to those items and to the disallowed Schedule A deductions specifically addressed in this opinion.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.